REI INDUSTRIES, INC., et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 11894.

Court of Civil Appeals of Texas,
Austin.

March 8, 1972.

---

Ramirez, Canales, Freeman & Juarez, Brad Freeman, Dallas, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, first Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert E. Owen, Van Thompson, Jr., and James Robert Giddings, Asst. Attys. Gen., Austin, for appellee.

SHANNON, Justice.

Appellee, The State of Texas, sued appellants, REI Industries, a corporation, and eight persons,[1] all connected in some capacity with REI Industries, Inc., in the District Court of Travis County for alleged violations of the Deceptive Trade Practices Act, Vernon's Tex.Rev.Civ.Stat. Ann. art. 5069–10.01 et seq., and the Texas Antitrust Act, Tex.Rev.Civ.Stat.Ann., Texas Business and Commerce Code, art. 15.01 et seq. V.T.C.A. Appellants are appealing from a judgment granting a temporary injunction enjoining appellants from performing certain contracts and from making certain representations.

REI Industries, Inc. fabricates the "Paser Magnum," a device which is attached to spark plug wires in a gasoline combustion engine. Among its many properties appellants advertise that the "Paser Magnum" reduces air pollution. Its many benefits are to be realized, so it is claimed, for the low price of $29.95 complete with a "money-back guarantee."

With respect to the alleged violations of the Deceptive Trade Practices Act, appellee declared that the appellants were selling the "Paser Magnum" by representing that its use caused less air pollution (up to 100% reduction in hydrocarbons), and that this result was guaranteed "or your money back." Appellee pleaded further that appellants claimed in their advertising literature that one of their warehouse distributors could earn at least $18,000 annually while a General Distributor could earn over $100,000, and that by utilizing appellants' "Pyramid Sales Scheme" to market the "Paser Magnum" participants could reasonably expect to receive large profits because of the virtually inexhaustible number of potential participants.

In the order, the court enjoined appellants from carrying out certain agreements allegedly in violation of the Antitrust Act. This part of the order is not attacked. Apropos the alleged deceptive trade practices the court enjoined appellants from representing that (1.) the "Paser Magnum" significantly reduces air pollution; (2.) the "Paser Magnum" guaranteed on a money back basis unless the conditional nature of the guarantee is conspicuously displayed or mentioned; (3.) participants in appellants' marketing program will earn any stated sum by representing the past earnings of participants unless those earnings reflect the earnings of a substantial number of participants in Texas, and (4.) it is easy for participants to recruit prospects who will engage in appellants' marketing program.

Appellants urge error by three points, asserting that as there was no probative evidence supporting the temporary injunction, its entry was an abuse of discretion; the temporary injunction did not state the reasons for its issuance; and the temporary injunction was too broad and did not clearly inform appellants of the acts restrained.

The pertinent portions of the statute are as follows.

---

1. Eugene Irvin, Jr., Daniel Merrifield, Bob Phillips, Elton Harwell, Wayne Strube, R. T. Bothwell, Bill E. Dato, Jr. and Jack E. Wilborn.

Article 5069–10.01(b) "Deceptive practices" means any one or more of the following:

.  .  .  .  .  .

"(5) representing that goods or services have . . . characteristics, ingredients, uses, benefits or quantities that they do not have . . ." . . . "

"(12) engaging in any other conduct which similarly creates confusion or misunderstanding;"

■ This is an appeal from an order granting a temporary injunction. In considering an application for a temporary injunction the trial court has broad discretion to grant or deny the application. On appeal the judgment of the trial court will not be disturbed unless it is evident that the court abused its discretion. Texas Foundries, Inc. v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460 (1952).

■ After reviewing the record we are not persuaded that the trial court abused its discretion in entering the temporary injunction. Merrill W. Korth, a mechanical engineer for the Bureau of Mobile Pollution Sources, testified concerning the results of tests to determine whether the "Paser Magnum" reduced vehicle emissions. Those results showed the "Paser Magnum" to have no significant effect on either increasing or decreasing vehicle emissions.

■ In appellants' "Opportunity Meeting" brochure it is stated, "The Paser Magnum is laboratory tested with the results guaranteed or your money back." Similar representations are made in appellants' sales kit and other advertising. However, in the same material in an obscure place appears the guarantee very conditionally stated:

"90 Day Money Back Guarantee

The manufacturer guarantees the performance of the Paser Magnum to the retail purchaser, and will refund the full purchase price, provided that warranty has been registered within 30 days of original installation, and subject to the provision that manufacturer shall have the option of verifying vehicle condition and test results and procedures."

In appellants' "Opportunity Meeting" brochure and other advertising material, the marketing scheme is set out and "conservative" estimates of potential earnings of $1,000.00 per week are stated.

Appellants appear to argue that, assuming there was evidence of "deceptive trade practices," there was " . . . no evidence of a representation, or presentation to a member of the public . . ." and no evidence that " . . . the printed items, in fact, ever reached any member of the public." This argument is contrary to the facts. Ronald Luna, an assistant attorney general, attended one of appellants' "Opportunity Meetings" in Dallas on July 19, 1971. At that meeting there were ten to fifteen members of the general public who heard the sales presentation and received appellants' literature.

■ Appellants' second point claims that the temporary injunction is invalid because it does not set forth the reasons for its issuance. Rule 683, Texas Rules of Civil Procedure, provides in part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; . . ."

The relevant part of the order is as follows:

" . . . and it appearing to the court that the State of Texas is entitled to the temporary injunction as hereinafter granted, the same being within the allegations and prayer, for the reasons that the acts and practices of defendant, REI Industries, Inc., complained of and set forth in said verified petition, to which reference is hereby made for purposes of a more detailed description, in the conduct of a 'Pyramid Sales Scheme' in the

sale and distribution of its product, the Paser Magnum, violate Article 15.02 and 15.04, of the Business and Commerce Code, the Texas Antitrust Act, and Article 5069, Sections 10.02 and 10.04, the Deceptive Trade Practices Act, which acts and practices, if continued, will result in irreparable injury to the public of the State of Texas; and that plaintiff, the State of Texas, has made a proper showing of a probable right and probable injury of the matters in the temporary injunction for which it prays."

The reasons for the issuance of the injunction are sufficiently stated in the order. See Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953). Appellants' reliance on Smith v. State, 450 S.W.2d 393 (Tex. Civ.App.1970, no writ) is misplaced since in that case no reasons whatever were stated in the injunctive order under consideration.

Appellants' final point complains that the temporary injunction is too vague and broad. Specifically, appellants assail that portion of the order which prevents appellants from representing the past earnings of participants in its marketing plan, unless " . . . the past earnings represented are those of a substantial number of participants in the State of Texas." Appellants say that this part of the order calls for interpretation and inference by them as to its meaning. This point has no merit. This part of the order informs appellants that if they are to employ the "success story" device to gain new converts then an accurate picture of the earnings of participants is to be presented rather than an atypical one. As such, we hold that the order is sufficiently definite and precise so as to place appellants on notice of the acts enjoined. See San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 156 Tex. 7, 291 S.W.2d 697 (1956).

The judgment of the trial court is affirmed.