

## NUMBER 13-11-00181-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**LARRY ROBERT GUERRERO,**                                            **Appellant,**

**v.**

**WILLIAM SATTERWHITE JR. AND**
**LARRY MOTTU GUERRERO,**                                        **Appellees.**

**On appeal from the 329th District Court
of Wharton County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Larry Robert Guerrero (Robert) appeals from the trial court's interlocutory order granting a temporary injunction. In relevant part, the trial court ordered Robert to deliver possession of a 2004 Ford Thunderbird automobile to appellee

William Satterwhite Jr. By a single issue, Robert contends that the trial court erred in granting the temporary injunction because the order granted Satterwhite final, not temporary, relief, the writ of injunction was not properly served, and the evidence was insufficient to grant a temporary injunction. We affirm.

## I. BACKGROUND[1]

Satterwhite and Robert claim ownership of the Thunderbird. It is undisputed that the vehicle was awarded to Robert's step-mother, Lydia Guerrero, when she and Robert's father, Larry Mottu Guerrero (Larry), were divorced.[2] Satterwhite asserts that he owns the Thunderbird through a transfer from Lydia; and, as the trial court reminded the parties at the temporary injunction hearing, Satterwhite "has provided satisfactory evidence that at least the State of Texas believes that he owns it."[3] Robert claims that he bought the Thunderbird from Ford Motor Credit after it repossessed the vehicle from Lydia when she failed to make loan payments during the divorce proceeding. Robert possessed the Thunderbird when the lawsuit was filed.[4]

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] The trial court also enjoined Larry by the temporary injunction from which Robert appeals. Yet Larry is identified as an appellee by both Satterwhite and Robert. Although Larry filed no brief, it is undisputed that he had no objection to this temporary injunction because he did not possess the vehicle and he has made no claim to it after it was awarded to Lydia in the divorce. Therefore, we agree that, for the purposes of the appeal of the April 2011 temporary injunction, Larry is an appellee.

[3] It is apparent from the record that the evidence to which the trial court refers is Texas Certificate of Title number 97803255, issued on October 22, 2010. The certificate of title identifies William Satterwhite Jr. as the owner of the Thunderbird at issue in this case and Lydia Rodriguez Guerrero as the previous owner. In addition, there are no liens shown on the title. The title is in the appellate record, attached as an exhibit to Satterwhite's petition. Finally, at the temporary injunction hearing, the trial court also stated that it had not "heard any evidence that anyone else owns this car other than Mr. Satterwhite."

[4] At the temporary injunction hearing, Robert informed the trial court that the vehicle was "around the outskirts of Hallet[t]sville."

2

Satterwhite sued Robert and Larry for conversion, seeking possession of the vehicle, actual damages for loss of use of the vehicle, and a temporary injunction.[5] Satterwhite later sought a judgment declaring the rights and interests of the parties regarding possession of, title to, and ownership of the vehicle.

In his request for a temporary injunction, among other things, Satterwhite asked that Robert deliver possession of the vehicle to Satterwhite pending a final trial of this cause. Robert responded, arguing, in part, that the trial court could not grant the final relief sought by Satterwhite's conversion claim. After the temporary injunction hearing, over Robert's objection, the trial court granted Satterwhite the following relief:

> It is accordingly, **ORDERED** that Larry Mottu Guerrero, Defendant, Larry Robert Guerrero, Defendant[] and Plaintiff William Satterwhite Jr., . . . are, [sic] commanded forthwith to **DESIST AND REFRAIN** from:
>
> 1. Destroying, removing, concealing, encumbering, transferring, or otherwise harming or reducing the value of the Vehicle;
>
> 2. Falsifying any writing or record relating to the Vehicle;
>
> 3. Misrepresenting or refusing to disclose the other parties or to the Court, on proper request, the location of the Vehicle;
>
> 4. Damaging or destroying the Vehicle, including any document relating to the Vehicle;
>
> 5. Tampering with any document relating to the Vehicle; and
>
> 6. Selling, transferring, assigning, encumbering, or in any other manner alienating the Vehicle
>
> until final judgment in this cause is entered by this Court or further order of this Court.

---

[5] Satterwhite also sued Robert and Larry for trespass to personalty, liability under the theft liability act, and for common law and statutory fraud. Robert does not address these causes of action in his arguments on appeal.

It is further **ORDERED** that Larry Robert Guerrero is COMMANDED to deliver the 2004 Ford Thunderbird automobile . . . together with all keys to the Court on the 8th day of April, 2011 at 12:00 p.m. at the Wharton County Courthouse, Wharton, Wharton County, Texas.

Plaintiff once in possession, shall immediately deliver and store the vehicle in his garage at [his residence]. Plaintiff shall insure the vehicle. Once stored, Plaintiff shall not drive the vehicle.

Robert challenges the temporary order only to the extent it orders him to deliver the Thunderbird with all its keys to the Court.

Satterwhite faxed a copy of the writ of injunction to Robert's counsel on April 7, 2011. On April 8, 2011, Robert filed a motion to quash the writ urging that he had not received proper service.[6] Robert's motion was heard that same day. At the hearing, the trial court denied Robert's motion, finding that the injunction was valid against Robert. Without determining whether Satterwhite's prior service was proper, the trial court considered Robert served with the writ of injunction and with adequate notice because Robert was present in court and had a copy of the writ.

Robert turned over possession of the vehicle as ordered. This appeal from the trial court's temporary injunction order followed.

## II. STANDARD OF REVIEW

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Appellate review is strictly limited to evaluating whether there has been a clear abuse of discretion. *Id.* The scope of review is limited to the validity of the temporary injunction order. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). In making this

---

[6] The transcript of the hearing on Robert's motion to quash is a part of the appellate record; however, only the first page of the motion and its attachment "A" appear in the record.

4

determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *Butnaru*, 84 S.W.3d at 204. We review the evidence in the light most favorable to the order and indulge all reasonable inferences in favor of the decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.—Corpus Christi 2007, pet. denied).

### III. DISCUSSION

**A. Final Relief**

Robert first contends that the trial court erred in granting Satterwhite's request for a temporary injunction because the injunction forced Robert to turn over possession of the vehicle without a trial on the merits, effectively giving Satterwhite the relief sought in his conversion claim. He asserts that the temporary injunction, therefore, accomplished the object of Satterwhite's conversion claim: possession of the car. We disagree.

If the effect of granting the temporary injunction accomplishes the whole object of this suit, it is improper for the court to grant the injunction. *Texas Foundaries, Inc. v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 464 (Tex. 1952). However, in a conversion claim the trial court must determine who has the right to legal possession of the property before the requested relief of possession can be achieved. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.44 (Tex. 2002) (defining conversion as "'the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights'") (quoting *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997)); *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004,

no pet.) ("To establish a claim for conversion of personal property, a plaintiff must have proof that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property."). In this case, the effect of the temporary injunction accomplished only possession until the right to legal possession of the Thunderbird, or ownership in this case, could be determined by a trial on the merits. *See Texas Foundries*, 248 S.W.2d at 464; *Johnson*, 73 S.W.3d at 211 n.44. Mere possession of the vehicle, without more, was not the whole object of Satterwhite's conversion claim.

We cannot conclude that the trial court's decision to grant Satterwhite's temporary injunction request was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204. Thus, the trial court did not clearly abuse its discretion on this basis.[7] See id.

## B. Service of Writ of Injunction

---

[7] Robert also contends that because he was in possession of the Thunderbird and had an ownership claim to it, the order which forced him to turn over the Thunderbird to Satterwhite without a trial altered the status quo in the lawsuit. In his "Final Relief" argument, Robert cites *Texas Foundaries, Inc. v. Int'l Moulders & Foundry Workers' Union*, a case that includes "status of the property" language. 248 S.W.2d 460, 464 (Tex. 1952). However, Robert does not develop this argument with thorough discussion or analysis. And he does not include the application of the "status quo" law to the facts of the case. Without further discussion and citations to the record or authority, we conclude that Robert has inadequately briefed this argument and, thus, has waived it. *See* TEX. R. APP. P. 38.1(i).

Finally, Robert asserts that "[b]ecause [Satterwhite] seeks recovery of the Thunderbird in his cause of action for conversion, Satterwhite has an adequate remedy at law and a temporary injunction cannot be granted." Without more, however, we are not persuaded by this argument and conclude that it is also inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

Robert also complains that the trial court erred when it enforced an injunction that was not properly served and, therefore, was not effective. Robert contends that service was improper because Satterwhite, a party to the lawsuit, served the writ.

Writs of injunction may be served anywhere by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court. TEX. R. CIV. P. 103; *see id.* at R. 686. "But no person who is a party to or interested in the outcome of a suit may serve any process in that suit . . . ." *Id.* at R. 103.

Robert concedes that he agreed to accept service by fax. However, Robert maintains that he did not agree to waive all other requirements for proper service, including the requirement that no party to the suit may serve any process in that suit. *See id.* At the hearing on Robert's motion to quash the writ of injunction, however, the following discussion occurred:

The Court: How did you serve the Writ of Injunction?

Satterwhite: I served it via fax to . . . counsel for Mr. Robert Guerrero.

The Court: And why did you do it that way?

Satterwhite: Because he told me he would accept service by fax.

The Court: All right.

Satterwhite: I took that to mean that he would accept service for his client; and there was no qualifications on it, your Honor, that it be served by any specific individual.[8]

---

[8] Counsel for Robert later, on the record, informed the court that he never agreed to let Satterwhite, himself, serve the writ.

The Court:    Now, [counsel for Robert], you filed a Motion to Quash the Writ saying that you hadn't received proper service, correct?

[Counsel]:    Yes.   Well, the issue is that it wasn't served by a proper party.

The Court:    Okay.   Because it was served by Mr. Satterwhite by fax to you?

[Counsel]:    Not [that] it was served by fax.   That it was served by Mr. Satterwhite.

The Court:    Okay.   All right.   Well, it is 9:30 in the morning.   This is April 8th.   Mr. Larry Robert Guerrero is here present in Court. Hello, Mr. Guerrero.

Guerrero:     Good morning.

The Court:    You have a copy of the Amended Writ of Injunction?

Guerrero:     I do.

The Court:    I'm now going to have you served.

[Counsel]:    Okay.

The Court:    You have all the notice of the writ that you're entitled to, and it will be enforced.

In sum, without determining whether Satterwhite's prior service was proper, the trial court considered Robert served with the writ of injunction and with adequate notice because Robert was present in court and had a copy of the writ.   Indulging all reasonable inferences in favor of the decision, we agree with the action taken by the trial court.   *See Davis*, 571 S.W.2d at 862; *City of McAllen*, 221 S.W.3d at 893.   The trial court, after confirming that Robert was present in the courtroom and that he had a copy of the amended writ of injunction, had Robert served.   Service by the court was complete and proper.   Therefore, because the injunction was then properly served, we conclude that

8

the trial court did not abuse its discretion when it enforced the injunction.

## C.  Sufficient Evidence to Support the Trial Court's Order

By his final argument, Robert contends that Satterwhite's evidence was insufficient to grant a temporary injunction.   To obtain a temporary injunction, the applicant must plead and prove the following three elements:   (1) a cause of action against the adverse party; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.   *See Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied).   On appeal, Robert neither sets out this law nor develops his contention by identifying which element or elements Satterwhite allegedly failed to prove.   Therefore, we conclude this argument is inadequately briefed.   *See* TEX. R. APP. P. 38.1(i).

We overrule Robert's sole issue.

### IV.  CONCLUSION

Accordingly, we affirm the trial court's order granting the temporary injunction.


NELDA V. RODRIGUEZ
Justice


Delivered and filed the 31st
day of August, 2011.

9